# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| JONATHAN CHANEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-00675-NAD |
| ) | |
| ALLSTATE VEHICLE AND ) | |
| PROPERTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons stated below and on the record in the December 15, 2021 motion hearing, Defendant Allstate Vehicle and Property Insurance Company's motion for partial summary judgment (Doc. 14) is **GRANTED**, and Plaintiff Jonathan Chaney's bad faith claim is **DISMISSED**.

## BACKGROUND

Plaintiff Chaney filed a complaint against Defendant Allstate in state court, alleging two claims for relief: a claim for breach of contract, and a claim for bad faith refusal to pay an insurance claim. Doc. 1-1. Allstate removed the case to this court (Doc. 1), and later moved for partial summary judgment on Chaney's bad faith claim (Doc. 14).

1

### A.     Factual background

Plaintiff Chaney owns residential property located in Rogersville, Alabama. Doc. 1 at 3; Doc. 1-1 at 4.  On or about April 10, 2017, Chaney sustained water damage to his property, caused by a leaking pipe inside the property.  Doc. 15 at 1; Doc. 18 at 1.  Chaney sought insurance coverage for that water damage under a "House & Home" insurance policy issued by Defendant Allstate.  Doc. 15 at 1–2; Doc. 18 at 1–2.  After Chaney timely filed his insurance claim, Allstate assigned adjusters to that claim.  Doc. 15 at 1–2; Doc. 18 at 2.

Allstate designated Greg Mims as the structural adjuster responsible for Chaney's insurance claim.  Doc. 15 at 2; Doc. 18 at 2.  On April 12, 2017 (two days after Chaney had reported the damage to his property), Mims inspected Chaney's home, and prepared an estimate of the damage.  Doc. 15 at 2; Doc. 18 at 2.  Mims' notes from the inspection stated that "[Mims] went over the estimate with [Chaney] and he agreed with the scope.  [Chaney] is to provide the estimate to his contractor of choice and have him get back to [Mims] with any questions or concerns."  Doc. 16-3 at 2.

On April 15, 2017, Mims updated his estimate to $16,076.75; that estimate covered additional damage that Chaney had reported.  Doc. 15 at 2; Doc. 18 at 2.

On May 23, 2017, Chaney provided to Allstate a different estimate of the property damage.  Doc. 15 at 3; Doc. 18 at 2; Doc. 16-5 at 13.  That estimate totaled

$24,702.53.  Doc. 16-6 at 5.

On May 24, 2017 (the next day), Steve Dunn—a claims consultant for Allstate—emailed Chaney to ask about the difference between Allstate's April 15 estimate and Chaney's May 23 estimate.  Doc. 15 at 3; Doc. 16-7 at 5–6.  Dunn wrote that "[t]here is clearly something missing from the contractor's bid to explain the $7000 pricing difference."  Doc. 15 at 3; Doc. 16-7 at 6.

On May 26, 2017, Chaney replied to Dunn's email, stating that he "was not going to be able to find someone to make repairs at 17k," and that he "need[ed] this done asap."  Doc. 15 at 4; Doc. 18 at 2; Doc. 16-7 at 5.

That same day, Dunn replied, stating that Allstate was not telling Chaney that he could not use the contractor who had provided the estimate, but that Allstate needed the contractor to show "how he came up with the $7000 difference," given that Allstate and the contractor both "[were] using the same pricing software."  Doc. 16-7 at 5.

On June 5, 2017, Chaney emailed Dunn again, stating that he had another estimate, and that he would provide that estimate to Dunn when it was complete.  Doc. 16-7 at 4–5.  In that email, Chaney asked, "What do I need to do to get some money, so I can get started."  Doc. 16-7 at 5.

On June 6, 2017 (the next day), Dunn replied to Chaney's email:  "You can send the new estimate whenever you receive it.  I have issued payment based on

3

[Greg Sims'] estimate." Doc. 16-7 at 4. And, on the same day, Allstate issued to Chaney a check for $16,076.75—i.e., the amount of Sims' April 15 estimate. Doc. 15 at 4; Doc. 18 at 3; Doc. 16-7 at 4. In addition to that amount (for repairs), Allstate also paid to Chaney $6,591 for living expenses. Doc. 16-5 at 36.

Chaney never did provide another estimate to Allstate, but he did later submit receipts to Allstate for work totaling $33,477.90. Doc. 15 at 5; Doc.18 at 3; Doc. 16-5 at 36.

In his verified interrogatory responses, Chaney averred that he had spent more than $50,000 repairing the water damage. Doc. 15 at 5; Doc. 18 at 3; Doc. 16-8 at 2.[1]

In his deposition, Chaney testified that he had spent approximately $60,000 on the repairs. Doc. 15 at 5; Doc. 18 at 3; Doc. 16-5 at 19–20. Consistent with his interrogatory responses, Chaney also testified that he had taken out loans to cover the costs of the repairs, and that he had completed those repairs himself (with help from his father). Doc. 18 at 3; Doc. 16-5 at 19.

---

[1] Chaney's full interrogatory response reads as follows: "Cost of repair totals over $50,000.00. I have previously given receipts to defendant for as many materials as I could find. My father helped me with the labor, and I would give him gas money and buy food for him daily. I took out a 401k loan for the amount of $34,000.00 on February 20, 2018. This money was used to buy supplies and pay bills since I missed many days from work to be able to work on my house. I also took out a $10,000.00 loan from TVA Community Credit Union on May 25, 2018, to pay for a portion of the repairs at my home." Doc. 16-8 at 2.

**B.     Legal background**

       **1.     Removal (diversity jurisdiction), and applicable substantive law**

Defendant Allstate removed this case from the Circuit Court for Lauderdale County, Alabama, based on diversity jurisdiction. Doc. 1; *see* 28 U.S.C. § 1332. With respect to the necessary amount in controversy, a defendant's "allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Op. Co. v. Owens*, 135 S. Ct. 547, 553 (2014). In its notice of removal, Defendant Allstate alleged that Plaintiff Chaney has "asserted $65,000.00 to $70,000.00 in specifically itemized damages plus pain and suffering, mental anguish, emotional distress, consequential and incidental damages, punitive, exemplary and aggravated damages." Doc. 1 at 5–7. Here, the amount in controversy requirement is satisfied because Chaney's complaint seeks the contract damages discussed above, and punitive damages for Allstate's alleged wrongful conduct and "bad faith,"[2] among other things.

When a federal district court has diversity jurisdiction over state law claims, the court must apply the substantive law of the forum state. *McMahan v. Toto*, 256

---

[2] In determining the amount in controversy, the court can consider the value of a bad faith claim for punitive damages and applicable state law standards. *See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240–43 (1943); *Broughton v. Florida Int'l Underwriters, Inc.*, 139 F.3d 861, 863–64 (11th Cir. 1998) (statutory cap on damages).

F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Consequently, this court applies the substantive law of Alabama.

### 2. Alabama law on bad faith refusal to pay an insurance claim

Alabama recognizes two forms of bad faith refusal to pay an insurance claim: "normal" bad faith, and "abnormal" bad faith. *White v. State Farm Fire & Cas., Co.*, 953 So. 2d 340, 347–48 (Ala. 2006).[3]

#### a. A "normal" bad faith claim

On a "normal" bad faith claim, a plaintiff must show the following: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for the refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001). In this regard, a plaintiff alleging normal bad faith "bears a heavy burden." *Id.*; *LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991) (citation omitted).

Indeed, to avoid summary judgment on a normal bad faith claim, the

---

[3] "Alabama law recognizes two forms of bad faith: 'normal' and 'abnormal.' These are not two torts but a single tort 'with different options for proof.'" *Coleman v. Unum Group Corp.*, 207 F. Supp. 3d 1281, 1284 (S.D. Ala. 2016) (quoting *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257–58 (Ala. 2013)); *see Mutual Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004) ("Under Alabama law, there are two methods by which a party can establish a bad faith refusal to pay an insurance claim.  An insurance company may be liable for either 'normal' bad faith or 'abnormal' bad faith." (citations omitted)).

6

plaintiff's "underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008) (quoting *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1155 (Ala. 2001)).

### b.  An "abnormal" bad faith claim

Among other things, "abnormal" bad faith can include a failure to investigate an insurance claim. *See Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005). On an "abnormal" bad faith claim that is based on an alleged failure to investigate, a plaintiff must show the following: "(1) that the insurer failed to properly investigate the claim or subject the results of the investigation to a cognitive review and (2) that the insurer breached the contract for insurance coverage when it refused to pay the insured's claim." *Simmons v. Congress Life Ins. Co.*, 791 So. 2d 371, 379 (Ala. 2000) (quoting *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999)).

On an abnormal bad faith claim premised on an alleged failure to investigate, the "material question" is whether the insurer "recklessly or intentionally failed to properly investigate" the insured's "claim or to subject the results of an investigation to a cognitive evaluation." *Simmons*, 791 So. 2d at 381 (citations omitted).

In addition, an abnormal bad faith claim requires "sufficient evidence of dishonest purpose or breach of known duty . . . through some motive of self-interest

or ill will." *Singleton*, 928 So. 2d at 283 (quoting *Slade*, 747 So. 2d at 303–04).

### C. Procedural background

On March 5, 2020, Plaintiff Chaney initiated this action in state court (Doc. 1-1), and on May 13, 2020, Defendant Allstate filed its notice of removal (Doc. 1).

After Allstate removed this case, the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). Doc. 9. And, on June 14, 2021 (after the close of discovery), Allstate filed this partial summary judgment motion on Chaney's bad faith claim. Doc. 14.

This case was reassigned to the undersigned on August 31, 2021. Doc. 21. After a status conference, the parties submitted supplemental briefing on Allstate's partial summary judgment motion. Doc. 22 (order); Doc. 23 (order). The parties now have fully briefed this motion (Doc. 15; Doc. 18; Doc. 20), including that round of supplemental briefing (Doc. 24; Doc. 25). And the court held a motion hearing on December 15, 2021 (*see* Minute Entry, Entered: 12/15/2021).

In his complaint (Count 2), Chaney alleged Allstate's "bad faith failure to pay the claim and/or the bad faith failure of [Allstate] to properly investigate, adjust and pay the claim." Doc. 1-1 at 6. In his supplemental brief, Chaney confirmed that he is asserting that Allstate "committed both 'normal' bad faith and 'abnormal' bad faith." Doc. 24 at 1.

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes "that there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond the allegations to offer specific facts creating a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's job is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The court must view all evidence and draw all reasonable inferences in the light most favorable to the nonmovant. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

## DISCUSSION

There is no triable issue on Plaintiff Chaney's normal bad faith claim, or his abnormal bad faith claim.

## I. There is no triable issue on Plaintiff Chaney's normal bad faith claim.

On Plaintiff Chaney's normal bad faith claim, there is no triable issue of fact. As explained above, a normal bad faith claim requires that the plaintiff's "underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Jones*, 1 So. 3d at 32. But Chaney has not filed a summary judgment motion on his breach of contract claim, and the record would not support judgment as a matter of law on that claim; rather, the breach of contract claim will be for the jury. If anything, the record shows that the parties dispute the cost of the repairs that Chaney has claimed under his insurance policy.

As a preliminary matter, Allstate *did* pay to Chaney more than $16,000 to cover the cost of repairs, and more than $6,000 for living expenses. Doc. 15 at 4; Doc. 18 at 3; Doc. 16-7 at 4; Doc. 16-5 at 36. In fact, the record demonstrates that Allstate has *not* actually issued a refusal or denial of Chaney's insurance claim, given that he still is seeking additional payment to cover the cost of repairs.

Relying on *Hand v. Allstate Insurance Co.*, No. 6:19-CV-00453-LSC, 2021 WL 2867034 (N.D. Ala. July 8, 2021), Chaney argues in his supplemental brief that Allstate "constructively" has denied his insurance claim, even though "there is no 'express' ('actual') denial." Doc. 24 at 2. But in *Hand* it was undisputed that Allstate owed the insured a supplemental payment of approximately $25,000, and that Allstate had delayed paying that undisputed amount for more than 2 years.

2021 WL 2867034, at *4.  According to the district court, "Allstate hadn't paid nearly $25,000 in *undisputed* claims," and the "two-year delay in payment likely would have amounted to a constructive denial."  *Id.* (emphasis added) (citing *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 938 (Ala. 2001)).  The facts in this case are distinguishable from those in *Hand*.  Here, without any delay, Allstate issued Chaney a check in the amount of $16,076.75.  While Chaney maintains that he is entitled to additional payment, the parties dispute the cost of the repairs.  So, unlike *Hand*, Allstate has not delayed payment of any undisputed amount, and there is no triable issue on a theory of constructive denial.

Moreover, based on the record evidence, a jury could not reasonably find the "absence of any reasonably legitimate or arguable reason" for Allstate's refusal to make an additional payment.  *See Singleton*, 928 So. 2d at 283; Doc. 15 at 3, 11–12; Doc. 16-7 at 4–6.  When Chaney submitted his own estimate for the cost to repair the water damage, Allstate asked for more information about the difference between Chaney's estimate ($24,702.53) and Allstate's estimate ($16,076.75).  Allstate's claim adjuster (Sims) had inspected Chaney's property, and used software to calculate Allstate's estimate.  Doc. 15 at 2; Doc. 16-4; Doc. 18 at 2.  Chaney's estimate appeared to have been calculated using the same software, and the record appears to show that Chaney's estimate covered the same scope of work as Allstate's estimate.  Doc. 15 at 3; Doc. 16-7 at 5; Doc. 18 at 3; Doc. 16-5 at 14.

Chaney told Allstate that he "was not going to be able to find someone to make repairs at 17k"—approximately, the amount of Allstate's estimate—and said that he would submit another estimate. Doc. 15 at 4; Doc. 18 at 2; Doc. 16-7 at 5. Allstate asked Chaney "how" his contractor had "c[o]me up with the $7000 difference," given that Allstate and Chaney's contractor both had "us[ed] the same pricing software." Doc. 16-7 at 5. But Chaney never submitted any additional information to support that estimate, and never submitted the additional estimate that he said he would have completed; instead, Chaney later submitted to Allstate receipts for $33,477.90 in repairs.[4] Doc. 15 at 5; Doc. 16 at 5; Doc. 18 at 3; Doc. 16-5 at 36.

At a minimum, Allstate had a "debatable" reason not to make the additional payment that Chaney had requested, and "[w]hen a claim is debatable, an insurance company is entitled to debate it." *See Insurance Co. of N. Am. v. Citizensbank of Thomasville*, 491 So. 2d 880, 884 (Ala. 1986) ("There was a genuine dispute about the validity of the claims, and that dispute provided a debatable reason for denying coverage."). Allstate asked Chaney to explain the difference between his estimate and Allstate's estimate. Chaney never did so. Allstate still paid to Chaney the amount of its estimate (more than $16,000).

---

[4] Then, in this litigation, Chaney said that the cost of repairs was more than $50,000, or approximately $60,000. Doc. 15 at 5; Doc. 18 at 3; Doc. 16-8 at 2; Doc. 16-5 at 19–20.

To be sure, Chaney ultimately may prevail on his breach of contract claim, and prove that Allstate owed more than $16,076.75 under his insurance policy. But, on these facts, Allstate's (partial) refusal to pay a "debatable" insurance claim cannot be normal bad faith. *See Insurance Co.*, 491 So. 2d at 884.

## II. There is no triable issue on Plaintiff Chaney's abnormal bad faith claim.

On Plaintiff Chaney's abnormal bad faith claim, there is no triable issue of fact. In this regard, Chaney argues that Defendant Allstate "engaged in 'abnormal' bad faith by failing to adequately investigate [his] claim." Doc. 24 at 4–5; *see* Doc. 18 at 10. Specifically, Chaney argues that, "[r]ather than properly investigating and adjusting this claim, Defendant placed upon Plaintiff a burden of obtaining a contractor" who would repair the damage at Allstate's estimated cost, and that Allstate had an "obligation" to "send its adjuster back to the property to review the damages." Doc. 18 at 9.

But Chaney has not identified any legal authority that would impose such duties on an insurance provider, or that would support his assertions that such evidence is sufficient to get an abnormal bad faith claim to the jury; the court also has been unable to locate any such authority. *See* Doc. 23 at 2 (quoting Doc. 18 at 6, 9).

In any event (as explained above), an abnormal bad faith claim requires the plaintiff to show the defendant's "dishonest purpose" or "some motive of self-

13

interest or ill will." *Singleton*, 928 So. 2d at 283. But there is no such evidence here.

Under Alabama law, "more than bad judgment or negligence is required in a bad-faith action." *Singleton*, 928 So. 2d at 286–87. In this case, Allstate's adjuster has inspected the damage, Allstate has paid Chaney's insurance claim (at least in part), and the parties dispute the cost of the claimed repairs. Even if Chaney would characterize Allstate's conduct as "bad judgment" or "negligence," there is no evidence of anything "more." *Id.*

In particular, there is no evidence that Allstate "*recklessly* or *intentionally* failed to properly investigate*" Chaney's insurance claim. *Simmons*, 791 So. 2d at 381 (emphasis added). Again, on Chaney's breach of contract claim, the record shows a bona fide dispute between the parties about the amount that Allstate owed Chaney under his insurance policy. But there is no evidentiary basis from which a jury reasonably could infer any "recklessly or intentionally" wrongful conduct. *Id.* So the record cannot create a jury question on an abnormal bad faith claim based on Allstate's alleged failure to investigate.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Defendant Allstate's partial summary judgment motion (Doc. 14), and **DISMISSES** Plaintiff Chaney's bad faith

14

claim.  By separate order, the court will set a status conference.

    **DONE** and **ORDERED** this January 26, 2022.

                                              _____
                                              **NICHOLAS A. DANELLA**
                                              UNITED STATES MAGISTRATE JUDGE